Our second case for this morning is Richard Doermer v. Oxford Financial Group. Yes, if you are Mr Rizzi, we are ready for you. Okay, please proceed. Good morning, your honors. I'm very happy to be here, but unfortunately this case doesn't belong in the federal court. So can I ask you a question? At the end of the district court's opinion, page 8, that's what I was looking for, he states, Doermer's complaint is dismissed without prejudice for lack of capacity. And our law is pretty clear that appellate jurisdiction requires a dismissal with prejudice, except in some very special circumstances such as no jurisdiction, where what has been definitively resolved is perhaps there's no federal jurisdiction, but it can continue in the state court. But is there anything else that's going to happen in the district court? Is there any, why is it without prejudice? The problem here, Judge, is that the district court entered judgment. So when he entered a judgment, and the judgment that was entered provides that the case is over. So once the court enters a judgment, I figured that that's final. It wasn't just a dismissal order. It was a judgment entered, which makes a difference. Well, in other words, it depends what the judgment says. I mean, sometimes the district, I wish they were a little more careful about this, to be honest. But sometimes the district courts will leave it up in the air as to whether they are really once and for all finished with the case. But I take it you would not object to our considering this as a dismissal with prejudice? You can't bring this case again? Correct. Okay, so you agree that we can just regard this as a dismissal with prejudice? Yes, I look at it as a judgment, and therefore it's over with, yes. Okay. It's kind of a loose language that the district court uses there, but unfortunately that happens. It's an appellate jurisdiction problem for us, and occasionally we have to send things back to the district judge and say, were you thinking of doing anything else? Suppose somebody, you know, suppose the capacity issue that he was concerned about was changed. Anyway, you can proceed. I will state to the court that we're looking upon it as a judgment and as a dismissal with prejudice. Point taken then, that's good. So you have a couple of theories on capacity, and the one I would like you, if you would be so kind as to do this, focus on, which you do not seem to say much about in your brief, is the notion that you might have capacity to sue as a beneficiary of the trust. Yes. Not the trust itself bringing this suit, which has some real problems. That issue, of course, is, in my opinion, not the main issue in the case. The main issue in the case of the court is jurisdiction, the federal jurisdiction, but I will go to that, Your Honor. Well, you can talk about jurisdiction first, if you want. Okay, well, this case doesn't belong here because the real party, there's no federal diversity of citizenship between the real parties and interests. But the trust is not the party under the Supreme Court's decision in the Cold case. You mean the AmeriCold case, Judge? Yeah, the AmeriCold case. Yeah, I'd like to address that. The paragraph that I believe Your Honor was making reference to in the AmeriCold case, that's that one paragraph that talks about a traditional trust? Okay. That paragraph, if you read the last sentence, Judge, in the whole paragraph, without taking the last sentence out of context, you have to read the whole paragraph, the court there is merely, in the first place, is a victim in the case. That case dealt with a retrust. It had nothing to do with traditional trust. What the paragraph that you're referring to, Judge, is really dictum. It's not essential to the holding in the case. As a matter of fact, it's not even related to any issue in the case that the court had. This court has had a number of opportunities to think about that since then, though, and it seemed that what the Supreme Court was saying, and actually we treat Supreme Court statements as dictum at our peril, but they sometimes think that maybe this isn't good faith implementation of what they're talking about. But this is not, you don't have a situation of some large unincorporated association where you're, of course, going to look at the citizenship of the members. This is simple little trust. With the paragraph you're referring to in Mericle, I would like to direct myself to that so I can give you my interpretation of that, although it's dictum and it's not applicable because it's not essential to the holding of the case. But in that case, I beg your honor to please read the Navarro case footnote 9. It explains what they're talking about in that paragraph in the Mericle case because here's what is happening. In the Mericle case, in that particular paragraph, the court is talking about the right, the interest of a party to be able to file a suit under Rule 7. That is totally different from the real parties and interest for diversity of citizenship. There are two, footnote 9, may I read footnote 9 in the Navarro case? It explains what I'm trying to say here. In the Mericle case, in the paragraph that you have reference to, your honor, the court is referring to the interest of the parties to be able to file a suit under Federal Rule 17. But then, in footnote 9 in Navarro, it says that, however, that's not the real party and interest to determine diversity of citizenship. For diversity of citizenship, you look to the citizenship of all of the members if it's an artificial entity. And there's no question that a trust is an artificial entity. No, actually, there is a question because what the Supreme Court has said is that to speak of a trust is really to speak of a relationship. It's not to speak of an entity except in certain situations that the court spells out. You, on page 16 of your brief, are talking about this as the citizenship of a trust. They say a trust is a fiduciary relationship, and the legal proceedings are brought by or against the trustees in their own name. And you've got a big problem. That's for filing a suit. No, no, no, no. Really. May I read footnote 9 in Navarro, Your Honor? It's on page 17 of my original brief. I know. I'm aware of that. It's very important because it distinguishes what I'm trying to say. It says there is a rough symmetry between the real party and interest standard of Rule 17a and the rule that diversity jurisdiction depends upon the citizenship of the real parties to the constitution. Sure, and then they give the example of labor unions. And this is so far afield from your situation that it's hard for me to see why it applies. You're not an unincorporated association like a labor union that's entitled to sue in its own name or a partnership that's entitled to sue in its own name where you look at all the members or an LLC that's entitled to sue in its own name that you look at the membership. There are plenty of examples. That's for suing in their own name. And I'm saying, and you look at the members for diversity. Yes. There are lots of examples, but yours isn't one of them. That would be completely contrary to AmeriCorps. Well, in the Navarro case in footnote 9, the last sentence says, it's what I'm trying to present here, in appropriate circumstances, for example, a labor union may file suit in its own name as a real party in interest under Rule 17A. That's what they're talking about in AmeriCorps. But then it says, to establish diversity, however, the union must rely upon the citizenship of each of its members. I already addressed that, and I just said there are other examples. There are labor unions. There are partnerships. There are LLCs. There are LLPs. There are different kinds of entities for which this footnote applies. But the Supreme Court's AmeriCorps case indicates that trusts are not one of them. For purposes of file. Your rule is that in all cases, when a trust brings a lawsuit in its own name, the citizenship of the trustees or the beneficiaries is what governs for diversity. And I believe that is flatly inconsistent with AmeriCorps. For every artificial entity, you look to the citizenship of its members. A trust is an artificial entity. I mean, a trust is what's the difference between a relationship in a partnership and a relationship in a trust? It's a relationship, even in a partnership, even in a union. You need to go tell the Supreme Court that. They're all relationships. Well, that's a dictum sentence in there, Your Honor. And it's not consistent with footnote 9. It's not that it's not consistent. But footnote 9 in Navarro explains that they're only talking about filing the suit, not for diversity. Why should we tell the Supreme Court that in its own decision in AmeriCorps in 2016, it misconstrued a footnote in a 1980 decision? I don't feel comfortable doing that. It's not that it misconstrued it. I'm not saying it's inconsistent. What I'm saying is footnote 9 in Navarro merely explains what was said in AmeriCorps, because AmeriCorps was talking about what you need to file a suit. And it's true. Dormer could file this suit as a trustee in his name on behalf of the trust. So he's not the real party in interest. He's a nominal plaintiff. But in order to determine diversity, you don't look to. It's different for determining diversity. All right, we have your point. I mean, you're into your rebuttal time, if you'd like to save it, that's fine. If you'd like to hit anything else, that's also fine. Well, I'll save the time for rebuttal. Okay, that's fine. All right, Ms. Skocilis, is that? Skocilis. Skocilis. All right. Good morning. May it please the Court. My name is Christine Skocilis, and I represent Oxford Financial Group. And we would ask this Court to affirm both orders in this case. So what concerns me from your point of view is how it can be that, at least as a beneficiary, Mr. Dormer may not have the right to sue. I can certainly follow the argument that it's not the trust, and I can follow the argument that with three trustees, himself, Catherine, and the institutional trustee, we don't have a majority of the trustees. But under the third restatement, at least, it looks as though he might be able to sue as a beneficiary. So could you talk about that? Yes, Your Honor. Under the restatement, there is an exception, and under Illinois law as well, there are exceptions to the general rule that bars beneficiaries from suing third parties on behalf of the trustee. Do we know it's Illinois law, by the way, versus South Dakota? Well, South Dakota law would govern the administration of the trust agreement, and both South Dakota and Illinois law follow the restatements. I'm not aware of a South Dakota case that addresses this particular. There's not much South Dakota law on this point, yes. But the general rule says that beneficiaries are not entitled to sue third parties on behalf of the trust because that is the responsibility of the trustee or majority of trustees who administer the trust. There are certain exceptions to the rule, the one in particular that Mr. Dormer belatedly raised in his appeal. It's that a beneficiary may step into the shoes of the trustee if the beneficiary alleges that the trustee breached her fiduciary duty to trust and makes her a defendant. In this case, Mr. Dormer didn't sue his sister. He didn't allege that she breached any fiduciary duty. He didn't allege that her refusal to sue Oxford was wrongful. He merely alleged that he presented her with the opportunity to join the lawsuit, and she refused. Now, I presume had he chosen to file this lawsuit in Indiana, either in the federal or the state courts, he wouldn't have had any trouble getting personal jurisdiction over his sister. That's correct. He would have personal jurisdiction, and there's a question as to whether and I doubt he would have personal jurisdiction over his sister here. But a lawsuit would have been possible. In Indiana? Naming the sister, yeah. In Indiana, yes, it would have been possible. He chose to sue in Cook County, and I imagine he chose not to sue his sister because he wanted to name her an involuntary plaintiff so that he could say that she is a proper party, destroying diversity of jurisdiction. Ms. Coachella, I gather the problem is that in reply to the motion to dismiss, the plaintiff never made the argument that he was relying on the exception of the so-called beneficiary reception to the general rule that a beneficiary can't sue in the restatement. Am I right? That's correct. As the district court correctly observes, Mr. Dormer waived the argument that an exception to the beneficiary standing general rule would apply here. Now, my hesitation there, and I'd like you to address it, is that while he may not have raised that as a theory, didn't he allege sufficient facts in the complaint to put the district court on notice, and, in fact, wasn't the district court on notice that that theory was in play? And, of course, we have to plead facts, not theories. The fact that you don't mention a particular theory in your memorandum in opposition to a motion to dismiss, does that constitute a waiver under those circumstances? Well, I disagree that Mr. Dormer alleged sufficient facts to put the district court on notice that he was trying to raise this exception. Mr. Dormer alleges a variety of facts relating to his sister's conduct, that she was wrong not to agree to divide the issue trust, that she was wrong not to agree with his aggressive investment strategy for the trust. But the only allegation relating to her decision to sue Oxford is that she refused. He doesn't say the refusal was wrongful. He doesn't say that she was negligent. And I don't think that's enough to put the district court on notice that he was alleging that his sister breached her duty to the trust in the decision to sue, as opposed to her decision not to divide the issue trust or not to pursue a particular investment plan. Well, it's an odd complaint. There's a whole section of the complaint discussing his notion that she's an involuntary plaintiff. I mean, normally in federal court the way this would be done is that you would sue the person as a defendant and effectuate service and do the rest of the things, and the district court would have the power to realign the parties if the district court thought that the correct alignment required moving somebody over to the plaintiff's side of the ledger. But none of those things happened. That's right. And he sued in the state court of Illinois and under Illinois. Was she served with process as an involuntary plaintiff? Did he do anything? I don't believe so. I think she received a copy of the complaint. I don't think she was served, per se. It's an odd procedure. The thought that you can just sort of name people involuntary plaintiffs and not go through any formalities is contrary to the way it's usually done. Oh, I agree. I mean, simply typing the name of a person and calling them an involuntary plaintiff in the caption doesn't make that person a party. And in particular here, under Illinois law, there's no procedural mechanism for joining a reluctant necessary party as an involuntary plaintiff. Necessary parties who should be joined under Illinois law must be joined under compulsion as a defendant. So there wouldn't have been a mechanism for her to be named a plaintiff in any circumstance in the state court without her consent. Before we go on, I wonder if I could ask you one question about the trust. Your supplement has the agreement in it. This is the original agreement, I gather? My understanding is that there's just one agreement, yes. But they changed the venue. They changed the situs of the trust from Indiana to South Dakota. That's all they did. It was basically the same agreement. Yeah, and I want to say that they also replaced the corporate trustee, but it is the same agreement. It is the same agreement. That's what I needed to know. Yes. So at the end of the day, we would ask this court to affirm both orders because in this case, as this court pointed out on Appellant's argument, the sole plaintiff in this case is Mr. Dormer. It is not his sister. It is not the trust. And there's complete diversity with the sole defendant, Oxford. And we would ask to affirm the district court's order granting Oxford's motion to dismiss because either in his capacity as a minority co-trustee or in his capacity as a trust beneficiary, he has no authority to sue a third party such as Oxford on behalf of the trust. This is a matter of family law, isn't it? I think family business like this, this family really doesn't belong in court. I mean, clearly Mr. Dormer and his sister don't get along about a lot of things, and this court is, although the proper venue, having diversity jurisdiction, this case really doesn't belong in court. It is a family issue. Well, the district court never reached any issues about the propriety of paying Oxford's fees out of the trust resources or whether he could complain about her, whether a third party like Oxford who gives advice would hold any liability to anyone. That's right, and I think that gets back to your original question about appellate jurisdiction. In this case, it's true that the district court made the order without prejudice, but it was specifically with respect to the merits of the case. Judge Shaw was not trying to convey that he had considered that question about whether it was proper to pay Oxford or whether its advice was correct or not, but the court was clear that the decision was final with respect to Mr. Dormer's capacity, and he found that amendment would be futile. So this court does have appellate jurisdiction because there was nothing left to do at the district court level. It's final with respect to Mr. Dormer. Okay. If you have no other questions. I see none. We respectfully request that you affirm both orders. Thank you for your time. Thank you. Anything further, Mr. Rizzi? I promise to leave you alone. You can say whatever you want. With respect, Your Honor, with respect to the suing as a beneficiary, not only did the court know that that was the issue, Oxford noticed it because that's what they included in their memorandum. Everybody knew that we were proceeding on that basis, and you looked at the facts in this complaint. There's no question that that's what was involved here. Litigation isn't a gotcha thing. Litigation is you look at it, see what the allegations are. You look at the allegations in the complaint. There's no question that that issue was before the district court, Your Honor. So on that issue. Okay. You want me to help? May I, if I have a few times? It's your time, as you wish. On the whether or not there was, you need a mechanical, whether or not you need some mechanism, a process, like a federal rule to provide for filing an involuntary suit, the U.S. Supreme Court in the Radio Corporation of America case, the telegraph case, they decided that case in 1926. There was no federal rule. There was no procedural rule for stating that you had to do something to file an involuntary plaintiff, and they went ahead and they decided it just on the basis of that's what the law is. And then the federal rule 19 that provides for involuntary plaintiffs, that went into effect in 1938. I hate to say it. I'm breaking my promise. But rule 19 is not really pertinent here. It's about parties that should be joined, and it's about what happens if you can't join them, respectively 19A and 19B. Yeah. So it contemplates the fact that they're unjoinable because of personal jurisdiction issues, because of other barriers. Yeah. But all I'm saying, Judge, is when the U.S. Supreme Court decided the Radio Corporation of America case, there was no rule. There was a Conformity Act in place, which caused the courts to follow state law on these issues. Right. I don't think I have anything further, Your Honor. All right. Thank you very much. Well, in that case, thank you very much, and thanks as well to Ms. Skoucilis, and we will take the case under advisement.